1
2
3
4
5          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF WASHINGTON
6
7  CHAD M. CARLSEN and SHASTA          )
   CARLSEN, husband and wife, et al.,  )  NO. **CV-09-246-LRS**
8                                      )
        Plaintiffs,                    )  **ORDER DENYING MOTIONS**
9                                      )  **TO COMPEL ARBITRATION,**
        v.                             )  *INTER ALIA*
10                                     )
   GLOBAL CLIENT SOLUTIONS,            )
11 LLC, an Oklahoma limited liability  )
   company; ROCKY MOUNTAIN             )
12 BANK & TRUST, a Colorado            )
   financial institution,              )
13                                     )
        Defendants.                    )
14 _____     )

15      **BEFORE THE COURT** are the Defendants' Motions To Compel

16 Arbitration (Ct. Rec. 13 and 23) and Motions To Dismiss (Ct. Rec. 11 and 21).

17      These motions were heard with oral argument on February 4, 2010.  Darrell

18 W. Scott, Esq., argued on behalf of Plaintiffs.  Richard W. Espstein, Esq., argued

19 on behalf of Defendants.

20

21 **I.  BACKGROUND**

22      This is a diversity class action in which Plaintiffs allege Defendants have

23 violated Washington's Debt Adjusting statute, RCW Chapter 18.28 RCW, and/or

24 aided and abetted a violation of the same, and that these violations are in

25 contravention of Washington's Consumer Protection Act (CPA), RCW Chapter

26 19.86.  Global Client Solutions, LLC (GCS) is in the business of receiving funds

27 for the purpose of distributing those funds among creditors in payment or partial

28

**ORDER DENYING MOTIONS TO**
**COMPEL ARBITRATION, *INTER ALIA* -      1**

payment of obligations of debtors, including the Plaintiffs.  GCS, in partnership with Rocky Mountain Bank and Trust (RMBT), maintains and manages debt settlement accounts that are part of debt settlement programs offered by companies such as Freedom Debt Relief, LLC, and Silver Bay Financial, Inc..

Plaintiffs Chad and Shasta Carlsen received a letter from GCS, dated August 16, 2007, welcoming them to GCS and advising that GCS was "the processor for all activity related to your account" at RMBT.  According to GCS, "our duties as the processor for your account include the drafting of funds from your primary bank account into your account at RMBT as provided for in your application[1], as well as making payments to your creditors when we are instructed to do so."  Included with the letter from GCS was an "Account Agreement and Disclosure Statement."  Plaintiffs Carl and Mary Popham received an almost identical welcome letter from GCS, dated February 3, 2009, although whereas the debt settlement company for the Carlsens was Freedom Debt Relief, LLC, the debt settlement company for the Pophams was Silver Bay Financial, Inc..

The terms of the "Account Agreement and Disclosure Statement" were between the debtors (Carlsens and Pophams) and RMBT and GCS.[2]  Each

---

[1] This is a reference to a "Special Purpose Account Application" which is discussed *infra*.

[2] The "Account Agreement and Disclosure Statement" identifies GCS as the customer service provider for RMBT and defines "we" in the agreement to include RMBT or any agent of the bank, including GCS.  The Carlsens and Pophams executed separate agreements with their respective debt settlement companies, Freedom Debt Relief, LLC, and Silver Bay Financial, Inc.  Those agreements are not at issue in this case.

**ORDER DENYING MOTIONS TO COMPEL ARBITRATION, *INTER ALIA* -    2**

agreement contained the following clause regarding "Arbitration and Application of Law:"

> In the event of a dispute or claim relating in any way to this Agreement or our services, you agree that such dispute shall be resolved by binding arbitration using a qualified independent arbitrator of our choosing. Further, you agree that any arbitration shall take place in Colorado Springs, Colorado and that the laws of the State of Colorado shall apply. The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction.

Defendants seek to enforce the clause and ask the court to enter an order pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §4, compelling Plaintiffs to submit their disputes to binding arbitration per the terms of the above quoted clause.[3] Alternatively, Defendants seek dismissal of Plaintiffs' Complaints on the basis that those Complaints fail to state any claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## II. DISCUSSION

### A. Arbitration

9 U.S.C. §4 provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, **and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue**, the

---

[3] The parties do not dispute that the FAA applies to the contract at issue as it involves "commerce" as defined in 9 U.S.C. § 1.

**ORDER DENYING MOTIONS TO COMPLETE COMPEL ARBITRATION, *INTER ALIA* - 3**

court shall make an order directing the parties to proceed
to arbitration in accordance with the terms of the
agreement. The hearing and proceedings, under such
agreement, shall be within the district in which the
petition for an order directing such arbitration is filed. If
the making of the arbitration agreement or the failure,
neglect, or refusal to perform the same be in issue, the
court shall proceed summarily to the trial thereof. If no
jury trial be demanded by the party alleged to be in default
. . . the court shall hear and determine such issue.

(Emphasis added).

The Carlsens and the Pophams each executed a "Special Purpose Account
Application" which was submitted to RMBT. These applications were executed
at the same time the Carlsens and Pophams executed their respective agreements
with their debt settlement companies, Freedom Debt Relief and Silver Bay
Financial. The "Special Purpose Account Application" states, in very fine print,
that "the Account's features, terms, conditions, and rules are further described in
an Account Agreement and Disclosure Statement **that accompanies this
Application** (the "Agreement")." (Emphasis added). In the same fine print, albeit
italicized and bolded, the application goes on to state: "I [the signator]
acknowledge that I have received a copy of the Agreement; that I have read and
understand it; that the Agreement is fully incorporated into this Application by
reference; and that I am bound by all of its terms and conditions." The Pophams
signed their "Special Purpose Account Application" on January 27, 2009, but the
record shows the "Account Agreement and Disclosure Statement" was sent to
them later along with their welcome letter dated February 3, 2009 ("Included with
this letter is your Account Agreement and Disclosure Statement'). The Carlsens
signed their "Special Purpose Account Application" on July 21, 2007, but the
record shows the "Account Agreement and Disclosure Statement" was sent to
them later along with their welcome letter dated August 16, 2007 ("Included with

**ORDER DENYING MOTIONS TO
COMPEL ARBITRATION, *INTER ALIA* -    4**

this letter is your Account Agreement and Disclosure Statement").

Both the Carlsens and the Pophams assert an "Account Agreement and Disclosure Statement" did not accompany the "Special Purpose Account Application[s]" they executed[4], and the welcome letters corroborate that the "Account Agreement and Disclosure Statement" was not received by them until they had already executed the "Special Purpose Account Application[s]." Accordingly, the Carlsens and the Pophams could not have agreed to the terms of a contract (including the arbitration clause) of which they were not aware at the time they executed their "Special Purpose Account Application[s]" and their agreements with the debt settlement companies.[5]

Defendants contend Plaintiffs "cannot deny that they entered into a contract,

_____

[4] See Declarations of Shasta Carlsen and Mary Popham appended to Plaintiffs' response.

[5] After the Pophams received the February 3, 2009 welcome letter along with the "Account Agreement and Disclosure Statement," they received another letter, dated July 31, 2009, informing them that the account balance they had in RMBT had been transferred "to a larger, FDIC-insured national bank," that being the Bank of Oklahoma, N.A., located in Tulsa, Oklahoma.  Along with the July 31, 2009 letter, the Pophams received another "Account Agreement and Disclosure Statement" which, according to the letter, was to "govern your account going forward."  This new agreement contains an arbitration clause specifying that Tulsa, Oklahoma is where binding arbitration is to take place "utilizing a qualified independent arbitrator of Global's choosing."  A separate "Governing Law" clause specifies that Oklahoma law applies, "without regard to conflict of law provisions."

**ORDER DENYING MOTIONS TO COMPLE ARBITRATION, *INTER ALIA* -    5**

1    under which they performed and realized the benefits for months." It appears true

2    that by the time Plaintiffs received the "Account Agreement and Disclosure

3    Statement," they were already bound by the separate agreements they had

4    executed with the debt settlement companies and, by virtue of the "Special

5    Purpose Account Application[s]," had already authorized payments from their

6    Washington bank accounts into the accounts at RMBT which could be used to pay

7    creditors pursuant to their debt settlement "programs," as well as the fees of the

8    debt settlement companies and RMBT and GCS. That, however, does not mean

9    Plaintiffs had assented to the terms of the "Account Agreement and Disclosure

10   Statement," including the arbitration clause, of which they were not aware when

11   they executed their "Special Purpose Account Application[s]." Although

12   Defendants apparently contend that a copy of the "Account Agreement and

13   Disclosure Statement" was included with the "Special Purpose Account

14   Application," they offer no evidence to contradict the declarations of Ms. Carlsen

15   and Ms. Popham, other than the language in the "Special Purpose Account

16   Application" that an "Account Agreement and Disclosure Statement" accompanies

17   the application. The court is unwilling to take that language at face value.

18        Defendants contend that "a person who is presented with a contract has a

19   duty to read it and if the person signs it, he or she is 'conclusively presumed to

20   know its contents and to assent to them,' regardless of whether the person actually

21   read it." That is not the case, however, when a person is not presented with the

22   contract and all of its terms at the time he or she signs it. It goes without saying

23   that a person should at least have an opportunity to review the terms of a contract

24   before deciding to execute a document which binds him or her to those terms. The

25   Carlsens and the Pophams were not presented with such an opportunity at the time

26

27

28

**ORDER DENYING MOTIONS TO
COMPEL ARBITRATION, *INTER ALIA* -    6**

they executed their "Special Purpose Account Application[s]." The sentence in the "Special Purpose Account Application" which reads "I acknowledge that I have received a copy of the Agreement; that I have read and understand it; that the Agreement is fully incorporated into this Application by reference; and that I am bound by all of its terms and conditions," is of no consequence considering the "Account Agreement and Disclosure Statement" had not been received at that time.

Finally, Defendants apparently contend there is no legal requirement that they even had to give the Plaintiffs a copy of the "Account Agreement and Disclosure Statement." For this proposition, Defendants cite *Tjart v. Smith Barney, Inc.*, 107 Wn.App. 885, 28 P.3d 823 (2001). *Tjart*, however, is clearly distinguishable in that there, the court enforced an arbitration clause which was actually part of the application the plaintiff signed. In *Tjart*, the plaintiff says she signed the application and that after signing it, was not given a copy. *Id*. at 896. Here, the arbitration clause was not part of the "Special Purpose Account Application[s]" which the Plaintiffs signed, but rather part of a separate "Account Agreement and Disclosure Statement" which did not accompany the applications, notwithstanding the representation to the contrary in the applications ("Account Agreement and Disclosure Statement that accompanies this Application"). The "Account Agreement and Disclosure Statement" was not received by the Plaintiffs until later.

### B.  Failure To State A Claim (Motions To Dismiss)

The threshold issues pertaining to resolution of the Motions To Dismiss requires interpretation of certain provisions of Washington's Debt Adjusting

**ORDER DENYING MOTIONS TO COMPEL ARBITRATION, *INTER ALIA* -     7**

statute, RCW Chapter 18.28.  Are GCS and RMBT engaged in "debt adjusting" as defined in RCW. 18.28.010(1), and if so, are they "debt adjusters" as defined in RCW 18.28.010(2), or are they entities "doing business under and as permitted by any law of this state or of the United States relating to banks . . . "?

The parties acknowledge the dearth of legislative history and case law interpreting the Debt Adjusting statute.  Very recently, the Honorable Robert H. Whaley of this district observed in *Bradley v. Morgan Drexen, Inc.*, 2009 WL 2870508 (E.D. Wash. 2009) at *3 that "there are no reported cases enforcing the Washington Debt Adjustment Act."  At oral argument in the captioned matter, the parties indicated they were amenable to the possibility of certifying certain legal questions to the Washington Supreme Court, although they appeared to agree that limited discovery should be conducted regarding the precise nature of GCS and RMBT, and what they do in conjunction with each other, and in conjunction with debt settlement companies.[6]  Accordingly, the court will authorize such discovery with the intention that this will result in undisputed facts about the precise roles of GCS and RMBT from which appropriate legal questions can be formulated so as to allow the state supreme court to determine whether GCS and RMBT are engaged in "debt adjusting" and are "debt adjusters" under RCW Chapter 18.28.

## III.  CONCLUSION

Plaintiffs did not agree to arbitrate their claims against the Defendants.  An agreement to arbitrate did not exist.  Accordingly, Defendants' Motions To Compel

---

[6]  A scheduling conference has yet to be set and presumably, the parties have not had a Fed. R. Civ. P. 26(f) conference, a prerequisite to the conducting of general discovery.

**ORDER DENYING MOTIONS TO COMPEL ARBITRATION, *INTER ALIA* -    8**

Arbitration (Ct. Rec. 13 and 23) are **DENIED**.

Within sixty (60) days of the date of this order, the parties shall complete the aforementioned limited discovery and serve and file with this court proposed questions for certification to the Washington Supreme Court. The parties may jointly propose the questions, or do so separately.[7] Determination of Defendants' Motions To Dismiss (Ct. Rec. 11 and 21) is **STAYED** pending further order of the court.

**IT IS SO ORDERED.** The District Court Executive is directed to forward copies of this order to counsel of record.

**DATED** this ___4th___ day of March, 2010.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Chief U. S. District Court Judge

---

[7] If the Debt Adjusting statute applies to GCS and RMBT, there is no need to consider the viability of non-statutory causes of action asserted against them by Plaintiffs. The court will not, however, rule out the possibility of certifying additional questions to the state supreme court regarding the viability of non-statutory causes of action.

**ORDER DENYING MOTIONS TO COMPILE ARBITRATION, *INTER ALIA* -    9**